# Exhibit E

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

<table>
<tr><td>In Re Ex Parte Application of<br>BAYERISCHE MOTOREN WERKE<br>AKTIENGESELLSCHAFT<br><br>    Applicant,<br><br>for an Order Pursuant to 28 U.S.C. Section<br>1782 Granting Leave to Obtain Discovery<br>for Use in Foreign Proceeding.</td><td>C.A. No. 25-1561-JLH-LDH</td></tr>
</table>

**DECLARATION OF DR. MARTIN DREWS IN SUPPORT OF BAYERISCHE
MOTOREN WERKE AKTIENGESELLSCHAFT'S
NOTICE OF RECENT DEVELOPMENTS AND FURTHER NARROWING OF
<u>REQUESTED DISCOVERY</u>**

i

I, Dr. Martin Drews, hereby declare as follows:

1.      I am an attorney at law admitted to practice in Germany. I am a partner at the Munich office of the law firm Bardehle Pagenberg[1]. I make this declaration based on my own personal knowledge, my review of the relevant German court filings and orders, and my review of Onesta's May 13, 2026 Covenant Not to Sue submitted by Mr. Marino and Mr. Loo in the Eastern District of Pennsylvania. If called as a witness, I could and would competently testify to the matters stated herein.

2.      I submit this declaration in support of BMW AG's Notice of Recent Developments and Further Narrowing of Requested Discovery in the above-captioned proceeding.

3.      Onesta brought three patent infringement actions against BMW AG in the Munich I Regional Court, one concerning U.S. Patent No. 8,854,381 (Case No. 21 O 13056/25), one concerning U.S. Patent No. 8,443,209 (Case No. 21 O 13057/25), and one concerning European Patent No. 2 473 920 B1 ("EP '920") (Case No. 21 O 12768/25). Collectively, I refer to these actions as the Munich Infringement Actions. BMW AG also joined a nullity action filed by NVIDIA GmbH challenging the validity of EP '920, which is pending in the German Federal Patent Court. Although Onesta IP, LLC later withdrew the Munich Infringement Actions, issues concerning the value-in-dispute and the EP '920 nullity action remain pending.

4.      Under German procedural law, the withdrawal of the infringement actions did not affect, much less eliminate, the remaining dispute concerning the value-in-dispute. That issue remains relevant because German courts use the value-in-dispute, which is determined as of the time the suit was filed, to calculate recoverable statutory attorneys' fees. The court assigns a fee to the value-in-dispute based on a statutory fee table (Annex 2 to the German Lawyers' Fees Act). By applying a fee rate (Annex 1 to the German Lawyers' Fees Act), the statutory fee entitlement is calculated. Costs are recoverable in the amount of the statutory fee entitlement. In

---

[1] Not a partner within the meaning of the German Act on Partnership Companies of Members of Independent Professions (*"Partnerschaftsgesellschaftsgesetz"*).

1

the Munich Infringement Actions, BMW AG requested that the value-in-dispute for each proceeding be set at €30 million, while Onesta requested that it be set at €1 million. The EP '920 nullity action likewise remains a live proceeding. As such, the discovery BMW AG seeks in the above captioned proceeding remains relevant to issues including licensing, patent valuation, invalidity, claim interpretation, and related valuation issues.

5.      On May 12, 2026, the Munich I Regional Court issued orders concerning the value-in-dispute in the three withdrawn Munich infringement actions. Based on my knowledge of German procedural law, those orders are appealable and did not eliminate the remaining value-in-dispute issues. Rather, they confirm that value-in-dispute remains a live issue under German law, and they identify categories of valuation-related information that were not yet developed in the record.

6.      In particular, the Munich orders identified missing information concerning Onesta's licensing "caps" and "floors," including aggregate royalty burden (ARB), and comparable license agreements. Based on my understanding of German law, materials of that kind, along with license agreements, royalty structures, settlement and licensing negotiations, and other valuation-related materials, bear directly on the value of the asserted patent rights and on the value-in-dispute determination under German law.

7.      Moreover, based on my knowledge of German law, the May 12, 2026, value-in-dispute orders also did not finally close the value-in-dispute issue. As reflected in the orders, a resulting value-in-dispute order may be appealed within the applicable period. German procedure permits the introduction of additional relevant evidence on appeal. The court may also amend such an order upon receipt of new relevant evidence. BMW AG therefore may rely on additional relevant information bearing on value-in-dispute in any further proceedings concerning value-in-dispute.

8.      Therefore, by way of an appeal of the May 12, 2026, value-in-dispute orders, BMW AG is able to supplement its position on value-in-dispute with information obtained through the parallel § 1782 proceedings to the extent such information supports a higher or

2

otherwise more accurate value-in-dispute determination. Targeted discovery concerning licensing practices, comparable licenses, and related valuation parameters therefore remains relevant to the German value-in-dispute issues notwithstanding the withdrawal of the infringement claims and notwithstanding the issuance of the May 12, 2026, orders.

9. Meanwhile, Onesta's May 13, 2026, Covenant Not to Sue ("Covenant") submitted by Mr. Marino and Mr. Loo does not impact the relevance of the discovery BMW AG seeks. First, under German procedural law, the value-in-dispute – which serves as the basis for calculating recoverable attorneys' fees – is determined by the claimant's objective monetary interest at the time the infringement action was commenced. Based on my understanding of German procedural law, the Covenant, declared only later, therefore does not render the value-in-dispute determination in the Munich Infringement Actions moot.

10. Second, the Covenant does not terminate or bar the EP '920 nullity action. Germany has a bifurcated patent litigation system in which questions of infringement and validity are heard in separate courts. Patent infringement actions are heard by Regional Courts, while nullity actions challenging the validity of a German patent or the German portion of a European patent are heard by the German Federal Patent Court (*"Bundespatentgericht"*). German nullity proceedings are separate from infringement proceedings.

11. Based on my understanding of German law, while a patent remains in force, the admissibility and continuation of a nullity action generally do not depend on the nullity claimant establishing a direct personal interest as separate personal *Rechtsschutzbedürfnis* (need for legal protection / standing), which means any person or company can file (and maintain) a nullity action without having to prove a direct personal interest. This is because the nullity actions serve the public interest by seeking to eliminate the protective effects of an unpatentable patent, which affect members of the public beyond the patent challenger (i.e., operate *erga omnes*).

12. Accordingly, while EP '920 remains in force, the continued admissibility of the nullity action does not depend on BMW AG presently facing, or being under threat of, an infringement claim under EP '920. A covenant or other waiver of rights therefore does not, by

3

itself, affect, much less terminate, the pending EP '920 nullity action while the patent remains in force.

13. Any issue concerning a direct personal interest as separate personal *Rechtsschutzbedürfnis* would arise, if at all, only after the patent lapses. EP '920 will not lapse for multiple years, well after the EP '920 nullity action is likely to conclude. Accordingly, any such issue is not presently before the German Federal Patent Court and does not affect the current pendency of the EP '920 nullity action.

14. The withdrawal of the Munich infringement actions and/or the Covenant therefore did not terminate or otherwise impact the nullity action concerning EP '920. As such, the EP '920 nullity action remains pending and discovery related to invalidity, claim interpretation, prior art, and related valuation issues remains relevant.

15. For those reasons, based on my knowledge of German law, neither the Munich I Regional Court's May 12, 2026, orders nor the Covenant eliminates the remaining German issues for which BMW AG seeks discovery. Those issues include the value-in-dispute determination in the withdrawn Munich Infringement Actions and the pending EP '920 nullity action. Accordingly, targeted discovery bearing on valuation, comparable licenses, prior art, invalidity, claim interpretation, and related issues may still be used in the German proceedings.

4

Executed this 2nd day of June 2026, at Hafling, Italy.


Dr. Martin Drews

Attorney at law